## DONALD v. PHILLIPS. (No. 1157–5125.)

Commission of Appeals of Texas, Section A. Feb. 6, 1929.

A. A. Lumpkin and Trulove & Frazee, all of Amarillo, for plaintiff in error.

Carl Gilliland, of Hereford, for defendant in error.

Statement of the Case.

NICKELS, J. Donald sued Phillips April 21, 1925. His allegations are: (a) In "the Summer of 1917" the parties "formed a partnership" and entered upon the partnership business of "purchasing, owning, handling and selling steers," "operating under the firm

name of Phillips & Donald," and continuing the business "until the Spring of 1923" (by which time, it is inferable, all assets had been given disposition). (b) "It was agreed and understood between said partners" that Donald "would furnish the money necessary * * * and should be paid interest" (inferably, at 10 per centum per annum) "on all moneys so advanced." (c) "It was also understood and agreed that both plaintiff and defendant should look after the buying and selling of the cattle * * * and that defendant should look after and care for the cattle * * * and in general supervise the feeding," etc. (d) "On or about November 3, 1919, plaintiff and defendant had an accounting and settlement of all their firm business, which accounting showed a loss of $519.90 by said partnership, which * * * was paid by * * * plaintiff alone * * * and it was agreed at the time said accounting was had that the defendant was indebted to plaintiff for one-half of said * * * loss" (i. e., one-half of $519.90). (e) Subsequently, "plaintiff furnished and advanced * * * to said partnership" $37,959.55 and received back (from all proceeds of cattle sales, from a "forfeit" and a "rebate") $32,715.46. (f) "Said partnership" became "indebted to the defendant on account of labor, forage, cake, hauling expenses, windmill repairs, etc., with interest thereon to May 1, 1925, the sum of $2,209.80" which represents the only part of the "losses" of the business borne by defendant. (g) Plaintiff has borne "losses" of the business to the extent of $11,602.90 (inclusive of interest calculated to "May 1, 1925"). (h) Total "losses," therefore, amount to the sum of $13,812.70, on account of which, and in view of the disparity of burdens thereof heretofore borne respectively by the parties, defendant is due plaintiff the sum of $4,696.65. (i) Plaintiff loaned defendant individually $200, which is unpaid and on which $86.14 interest has accrued; defendant loaned plaintiff individually moneys aggregating (with accrued interest) $424.67. (j) Hence, the final "balance" to which the plaintiff is entitled is the sum of $4,558.02.

There is attached to, and made a part of, the petition "Exhibit A," setting up details of "advancements" and receipts by plaintiff (except for the period antedating November 3, 1919, alleged date of the alleged "settlement"), and including interest charges to May 1, 1925. The latest "cattle sale" shown is of date October 20, 1921, and "losses" (with interest) thus shown to have been borne by plaintiff to and including that date (and with receipt by plaintiff of all proceeds of that and other sales) amount to $8,792.84. Those "losses" are shown (in the exhibit) to have increased to $11,602.90 through accrual of interest (on the $8,792.90) to May 1, 1925. The exhibit omits any reference to the items, etc., making up the $2,209.80, alleged by plaintiff to have been "sustained" by Phillips.

Donald's prayer is for "an accounting and settlement of the partnership business and affairs between plaintiff and defendant," for formal dissolution, for recovery from Phillips of "the amount due and owing * * * by him on account of said partnership business as hereinbefore shown," and for "such general or special relief to which he" (Donald) "may show himself entitled."

Phillips, on oath, denied any partnership relation. "Further specially answering * * * and for cross-action" he averred: (k) In "the Summer of 1917" defendant owned 60 steer yearlings and had (under lease) "pasture lands" and had ranch equipment. Plaintiff bought "about 500 * * * steer yearlings" from third party. An agreement was made (and carried out) whereunder plaintiff bought from defendant the "sixty steer yearlings" mentioned and put them, with the 500 bought elsewhere, in defendant's pasture to be "looked after and cared for by defendant" but at "cost and expense" (including lease rentals) of plaintiff. Compensation for defendant's services was to be "one-half of all profits derived from the sale of said cattle after first deducting" original costs, interest thereon, and "expenses for caring for said cattle" and "interest thereon." Some of these cattle were sold in "the Fall of 1917" and the others were sold about June 1, 1918. About June 1, 1918, the parties had a "settlement" of "all matters pertaining to said transaction," in which plaintiff paid defendant $550 (i. e., one-half of the "agreed profits") "as full compensation for defendant's services." (l) A similar trade was made "about the first day of November 1918," and carried out in respect to 344 cattle bought by plaintiff from third parties. These cattle were sold "about the first of November, 1919." "There was no profits made in said cattle, and consequently defendant was not entitled to, and did not receive, any compensation" for his services rendered. (m) A similar agreement was made "about the first of October, 1919," and carried out in respect to 675 cattle to be bought by plaintiff and bought by him in lots at various times "from about November first, 1919, to about May first, 1920." Part of these cattle were sold "in the Fall of 1920," and the remainder "in the Fall of 1921." No profit was made. In caring for those cattle, defendant properly expended $1,459.25 in behalf of plaintiff. "About the first day of February," following the last sale, "plaintiff and defendant had a settlement," wherein it was agreed that plaintiff owed and would pay defendant "said sum of $1,459.25," but the sum has not been paid. (n) "About April first," 1922, plaintiff and defendant agreed to borrow, and did borrow, money on their "joint note," with which to buy "about 600 head of cattle" from "Halsell & Son." "About the first day of April, 1923," plaintiff and defendant made another agreement, whereunder plaintiff took the cattle

bought from "Halsell & Son," assumed the "joint indebtedness" mentioned, and became obligated to pay defendant $569.68 account of labor performed and expenses incurred by him in respect to these cattle. This sum has not been paid. (o) Outside the matters mentioned in (k), (l), (m), and (n), and on or prior to September 1, 1921, plaintiff owed defendant $159.25, and defendant owed plaintiff $200, which items were not taken into account in the "settlements" alleged.

Phillips prayed that Donald "take nothing by reason of his suit," but that he (Phillips) "have judgment * * * on his cross-action" against Donald "for the said amounts of $1,457.25, with interest thereon from November first, 1921, at * * * 6% * * * and the further sum of $569.68, with interest * * * at 6% * * * from April 1, 1923," plus general relief.

Donald, by supplemental petition, denied generally Phillips' averments.

Special issue No. 1 (inquiring whether "the cattle business" of the parties, as carried on from the "Summer of 1917" to "date of the purchase of the cattle from Halsell & Son," i. e., June 10, 1922, was a "joint enterprise prosecuted for their joint account") was answered "Yes." In response to other "issues," the jury found the sums of $8,792.84 and $1,657.25 as the "amount of loss sustained," respectively, by Donald and by Phillips in the period commencing "in the Summer of 1917" and ending June 10, 1922 (i. e., ending with the purchase from "Halsell & Son").

The judge, by findings, established the sum of $155.65 as the balance in favor of Phillips on account of the transactions outside the "cattle business," and pleaded, respectively, as in (i) and (o) above. The judgment recites that the "amount owing plaintiff by defendant on account of said partnership business should bear interest at the rate of eight per centum per annum from June 10, 1922, the date of the purchase of the Halsell cattle" to date of judgment, but that said sum of $155.65 should be deducted. Recovery in the sum of $4,679.05, with interest from date of judgment, was allowed Donald.

Phillips appealed on a record omitting any statement of facts. The Court of Civil Appeals reversed the judgment (and remanded the cause) on account of "fundamental error" in respects to be discussed in course of this opinion.

### Opinion.

1. In his first assignment Donald claims that Phillips waived the error (if error exists) in respect to the definition, etc., of partnership submitted to the jury in connection with special issue No. 1 by failing seasonably to object. That waiver, it is said, is an effect of article 2185, R. S. 1925.

Various objections were made at the proper time. It may be that some of them as made were sufficiently specific. The question here suggested need not be decided, since conclusions reached in other phases make the first assignment immaterial.

The questions up for decision arose, it will be noted, after verdict returned and judgment rendered. And they were and are presented for decision in view alone of the pleading, charge, verdict, and judgment—for statement of the evidence was not preserved and brought up on appeal. If, then, there be ambiguity in the pleading, charge, or verdict, such interpretation must be given as will support the judgment, if such an interpretation be reasonable. 21 R. C. L. pages 465, 615. And the pleading of each party may be considered, for in such a case it may be that one party supplies essentials omitted by the other. G. C. & S. F. Ry. Co. v. Anderson, 76 Tex. 244, 252, 13 S. W. 196; Arkansas Fertilizer Co. v. City National Bank, 104 Tex. 187, 191, 135 S. W. 529; Pope v. K. C. M. & O. Ry. Co., 109 Tex. 311, 322, 207 S. W. 514.

3. Existence of a "joint enterprise" presupposes an agreement to that end. Bolding v. Camp (Tex. Com. App.) 6 S.W.(2d) 94, 95, and cases therein cited. The agreement, of course, may have been an "expressed" one, or it may have been "implied" merely.

It may be true that the explanatory part of the charge allowed the jury to consider either an "expressed agreement" or an "implied" one, as it might choose, as basis for its answer to special issue No. 1. But, in responding, the jurors did not indicate in any way that they found a "joint enterprise," because they had previously found there was an "implied" agreement. The finding as made is consistent with existence of an "expressed" agreement, and thus has support in Donald's pleading, even when that pleading is interpreted in consonance with Phillips' views. That the finding may be consistent, also, with existence of an "implied" agreement is not fatal, since that is but a possibility, and another possibility (supporting the judgment) appears with at least equal clearness.

Donald's pleading, however, is not the only one in which an issue was tendered. Phillips (for defense and as basis for affirmative relief) charged agreements for the ventures foreign to partnership of any type or source. A finding of "joint enterprise" is a finding against his averments—a ground of avoidance of his defense and of his affirmative claims.

We do not mean to express or imply a thought that there may not be error in the judge's charge which might have become reviewable; what we hold is that "fundamental error" is not apparent in the verdict and judgment as viewed alone with Donald's averments, or alone with Phillips' averments, or with the averments of both in conjunction.

In what we have said in respect to the jury's finding of a "joint enterprise," we do not wish to be understood as holding that

such a finding, even when supplemented by one (such as was made) of "sharing profits as such," amounts to establishment of a partnership relation, in a controversy intimate to the parties to whatever relation there was. We suppose there may be "joint enterprises" which do not amount to partnerships (see Randall, Sawyer & Dyer v. Merideth & Ailman, 76 Tex. 669, 13 S. W. 576, and Reid v. Shaffer, 161 C. C. A. 479, 249 F. 553), even when there is sharing of profits. And while profit-sharing may, in a controversy between third parties, on the one hand, and the supposed partners, on the other, be evidence (cf. Buzard v. Bank of Greenville, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7), even conclusive evidence (cf. Kelley Island Lime & Transport Co. v. Masterson, 100 Tex. 38, 93 S. W. 427), of partnership, it is so (to the extent it is true) because in that situation actual intention may be made to yield to "legal intention" (33 C. J. 845; Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, Ann. Cas. 1916E, 446). Whereas in charges and countercharges inter sese, actual intent should control. Cf. Wineinger v. F. & S. Loan & I. Co. (Tex. Com. App.) 287 S. W. 1091. In the present case, however, evidence relating to intent, etc., may have been of such import as to supply whatever the jury's findings lacked in establishing a partnership relation. In truth, it may have been conclusive on those points. A statement of facts is not present; we must, perforce, suppose findings by the trial judge to supplement the verdict, if it needs that aid.

■ 4. Donald's allegation, set out in (f) in the statement of the case above, about the firm's indebtedness to Phillips, means (at least it will bear the interpretation) that $2,209.80 is the aggregate sum of liability on account, first of "labor," "hauling expenses," etc., and, second, of "interest" (on the items named) calculated to "May 1, 1925." Actual intent of the pleader to express such a meaning is probable, since interest to "May 1, 1925," was included in the statement of the aggregate (and items making the aggregate) of Donald's claims. The case was given disposition by the jury and the judge in relation to the period ending with June 10, 1922, and hence, without regard for "interest" accruable from June 10, 1922, to "May 1, 1925." We must assume the state of evidence required such a disposition. Donald's averment as written or as applied in the trial did not amount to a hard and fast "admission" that Phillips had borne $2,209.80 of the "losses"; it amounts only to an admission that (except for interest which might have accrued June 10, 1922, to "May 1, 1925") Phillips was entitled to credit in some amount. In respect to dates on which the several items of liability in favor of Phillips arose, Donald's pleading is silent, except that it declares or implies that all of the items accrued within the period intervening "the Summer of 1917" (maybe, the "settlement" on November 3, 1919) and the "Spring of 1923." The proof may have shown that the sum of items, plus the sum of "interest" to June 10, 1922, aggregated the sum of $1,657.25 (found by the jury as the "amount of loss sustained" by Phillips to that date); and, for reasons shown, that proof may have been consistent with Donald's allegations.

But if Donald's pleading inevitably meant what it was taken by the Court of Civil Appeals to mean, there would yet remain Phillips' pleading charging the sum of $1,459.25 as the amount due him account of matters arising within the period named, and, thus, tendering an issue. If his averment in respect to this particular matter were proved (as it may have been) and interest to June 10, 1922, were added (as it may have been), the aggregate may have been the $1,657.25 found by the jury.

It results that the Court of Civil Appeals erred in holding that the pleading does not support a recovery wherein a lesser figure than $2,209.80 was used as the factor of "amount of losses sustained" by Phillips.

5. We have examined the record for other apparent error to sustain the judgment of the Court of Civil Appeals (Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27; Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185), but have not perceived any.

6. Accordingly, we recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.