## HENNING et al. v. COX et al.
### No. 11062.

Circuit Court of Appeals, Fifth Circuit.
April 6, 1945.

Rehearing Denied May 25, 1945.

Clay Cooke, of Fort Worth, Tex., for appellants.

Archie D. Gray, John E. Green, Jr., W. J. Howard, Tarlton Morrow, Joseph W. Moore, and John C. Dawson, all of Houston, Tex., Robt. H. Rice, of San Antonio, Tex., and Harold A. Bateman and Carl C. Mays, both of Dallas, Tex., for appellees.

Before HUTCHESON and McCORD, Circuit Judges, and COX, District Judge.

HUTCHESON, Circuit Judge.

Brought as a class suit by plaintiffs against defendants, claimed to be joint adventurers with them, the suit was to establish their claims to, and obtain the fruits of, described oil properties of the joint

---

[6] Cf. Hutcheson, C. J., dissenting, in Crabb Com'r, 5 Cir., 119 F.2d 772.

adventure. The claim of the suit was: (1) that plaintiffs and defendants were joint adventurers in the development of a block of oil leases; (2) that some of the defendants, though joint adventurers with plaintiffs and obligated to deal fairly with them, had unfairly and in breach of their trust gotten hold of the producing portions of the oil leases and were excluding plaintiffs therefrom; (3) that one of the defendants, to-wit, one Pace, was wrongfully claiming a charge of $21,000 for rental of a drilling rig; and (4) that some of the defendants, to-wit, American Liberty Oil Co., Wofford Cain and Benson Drilling Co., though they had taken their interests subject to plaintiffs' rights as reserved in the deed to Cox, had failed to properly account to plaintiffs, and in addition had wrongfully paid to Pace proceeds of oil belonging to plaintiffs.

The defenses were: (1) res judicata, that all matters in controversy in the suit had been adjudicated against plaintiffs in a prior suit;[1] (2) that if the judgment in

that suit is not res judicata as to all matters in issue here, it unquestionably is, indeed it is recognized as, res judicata as to the construction and effect of the deed of March 8, 1934, from Stone-Leigh to Cox and supplemental instruments, and it has settled and determined that the only interest plaintiffs have is in oil and gas payments reserved in that deed, which interest defendants fully recognize; (3) denials that plaintiffs and defendants are, or ever were joint adventurers, and that any of the defendants except as provided in the deed to Cox, are liable to account to plaintiffs; (4) denials that defendants had in any manner defrauded, dealt wrongfully with, or failed in their duty to account to plaintiffs; and (5) laches and the four and five year statutes of limitation.

The controversy between plaintiffs and Stone-Leigh Oil & Gas Co. having been severed, the cause came on for trial as to all the other defendants before the court without a jury, and was fully tried on all the issues on evidence[2] for the most part

---

[1] Norris v. Cox, Tex.Civ.App., 131 S. W.2d 1028.

[2] It showed that Gulf Producing Co., which had earlier acquired oil and gas leases on a large body of land in Victoria County, Texas, on September 30, 1932, assigned about 21 of such leases, aggregating more than 4000 acres, to one Albert Stone, Stone to develop or have the property developed, Gulf reserving an interest of 25 percent to be accounted to it as net profits after deducting named expenses. Having organized Stone-Leigh Oil & Gas Co. for the purpose of developing them, Stone assigned the leases to it. Thereafter Stone-Leigh sold to numerous persons small rights in respect of such leases issuing to them certificates to evidence these rights. These certificates reserved to Stone-Leigh the fullest powers, including the power to sell and dispose of the interests in all or part of the leases assigned and to use all or any part of the assignee's interest in the proceeds to pay assignee's proportion of expenses assignor may incur.

Prior to March 8, 1934, Stone-Leigh drilled two wells on the leases, neither of them producing in paying quantities. It was in the course of this drilling that Stone-Leigh incurred the debt to Pace. Also prior to March, 1934, Stone-Leigh had sold certain undivided interests free of reservation of any kind to various persons, including 31 percent to Camp who in turn conveyed his interest, 28

percent (3 percent having been returned to Stone-Leigh) for cash and an oil payment of $195,580.

Becoming financially involved and unable to proceed with the development of the lease, Stone-Leigh, on March 8, 1934, conveyed 18 of the 21 leases, three having expired, to Rupert Cox, reserving an oil payment of $486,280 payable out of production and allocated on an acreage basis to all of the leases except 107½ acres of the Terrell lease, 56.38 acres of the Otto Kastner lease, 68.32 acres of the Nick Moeller and wife lease, 117.4 acres of the J. Zimmer lease, and 40.92 acres of the C. J. Keuhl lease.

Afterwards Cox acquired the Plummer 28% undivided interest, assigning in payment the NE½ of the 117.4 acres of the Zimmer lease and 107½ acres of the Terrell lease; the Camp oil payment in exchange for an assignment of the SE½ of the Zimmer lease; 50 acres of the Dietzel lease; and 60 acres of the Moeller lease and the Gulf overriding 25 percent net profit in exchange for certain leases; and thereafter the Gulf reconveyed the leases retaining certain oil payments.

All of the leases have long since expired, except certain of them exempted from the oil payment and certain of the non-exempt leases. Out of the production from the non-exempt leases, Cain has been paid and the operators claim to have tendered the balance into the state court in an interpleader suit.

undisputed. The district judge agreed with defendants: (1) that the defense of res judicata had been sustained; (2) that the defendants were not joint adventurers with plaintiffs, and that none of them had committed any wrongs or fraud; (3) that plaintiffs had no interest in or to the property except as retained in the deed to Cox; (4) that their interests so retained are not disputed but fully recognized by defendants and that defendants, who have disbursed funds in which plaintiffs had an interest under the Cox deed, subject to payments therein agreed to be made, have properly disbursed them, and plaintiffs should take nothing on account thereof; (5) that plaintiffs' ownership and right are as set forth in the deed to Cox, and plaintiffs are, therefore, not entitled to recover as claimed by them and defendants are entitled to judgment quieting them in the titles claimed by them and set forth in their answers; and (6) finally he found with the defendants on their plea of limitation. In accordance with these findings, he gave judgment in effect that defendants be confirmed in and the clouds removed from their titles, that Pace's claim and the payments made to him in satisfaction of it be confirmed, and finally, that plaintiffs, not having sued to recover the amounts due them under the reservation in the deed to Cox, take nothing by their suit as brought, and go hence, as to it, without day, without prejudice, however, to their rights to receive all amounts due them under the reservation in the deed to Cox after Pace's claim had been fully paid.

Plaintiffs are here insisting that the judgment was wrong throughout. As to the defense and finding of res judicata, they admit that in the state court suit they did attack the deed from Stone-Leigh to Cox, under which defendants hold, and the title of defendants under that instrument. They claim, however, that in this suit they are not attacking the deed to Cox, and defendants' titles under it, they are recognizing them, but are claiming the right to hold defendants as joint adventurers and trustees of those interests for their benefit and to compel them as joint adventurers and trustees to account to plaintiffs. As to the defense and finding that defendants are not joint adventurers with the plaintiffs, defendants insist that the undisputed evidence establishes and demands a finding, that they are. As to the claim of, and payment to Pace, they insist that his right to the payment was not established.

We are in no doubt that the district judge was right. Plaintiffs' claim that they are, or ever were joint adventurers with defendants is wholly without substance. As we pointed out in Porter v. Cooke, 5 Cir., 127 F.2d 853, 857,[3] a case where, as here, owners of small interests undertook to hold as a joint adventurer a defendant who was not such but was an independent actor, mere joint or undivided interest in properties does not make co-

---

Throughout the proceedings, the defendants affected by the oil payments have at all times recognized their liability for them, and it is not claimed that the judgment except as settling the validity of the Pace claim and the payments made to him has undertaken to settle the questions of the amounts due plaintiffs by those defendants who took subject to oil payments.

On November 5, 1935, the plaintiffs filed suit in the District Court of Victoria County, seeking to recover the title and possession of all the leases in question, to set aside the March 9, 1934, assignment from Stone-Leigh to Cox, and to recover a part of the oil and gas produced from all of the leases. A lengthy trial was had, resulting in a judgment completely sustaining the validity of the deed from Stone-Leigh to Cox and of the titles of those holding under Cox, and denying plaintiffs any relief as against them, but recognizing in plaintiffs the right to receive from the leases subjected in the deed to oil payments their portion of the oil payments reserved in the deed to Cox. This judgment was affirmed in the C. C. A., Norris v. Cox, Tex.Civ.App., 131 S.W.2d 1028, and a writ of error was refused.

3 " * * * whatever in law a joint adventurer, this case law hybrid of recent origin and undetermined connotation may be, and however difficult to distinguish in particular cases between joint adventures and partnerships, some courts having gone so far as to say that they are subject to the same rules and principles, it is as fundamental to the existence of a joint adventure as it is to the existence of a partnership, that there be a contract between the parties that they are or are to be joint adventurers. As in partnerships, whatever the case as to outsiders, as between the members the relationship of joint adventurers is a matter of intent and arises only where they intend and agree to associate themselves as such."

589

owners joint adventurers. An agreement that the parties are joint adventurers is an essential of the relation. The record here not only contains no evidence of such an agreement, but more clearly than it did in Porter's case, it completely refutes the notion that they were. Plaintiffs, therefore, in order to recover from the defendants must show that the defendants stand or stood in some kind of trust relationship to them by reason of fraud or overreaching. When, however, this question is broached, it is seen that the judgment in the state court suit pleaded as and found to be res judicata is a complete barrier to plaintiffs' recovery. In that case, every claim of fraud or overreaching, every attack upon the deed to Cox and upon the arrangements he made and the instruments he executed to clear the property for the benefit of the oil payment holders and to procure production was denied and repelled in the judgment against the plaintiffs, and each of the defendants now sued had his title confirmed. It will not avail plaintiffs to say that they do not now attack the deed to Cox, they do not now question the titles of the defendants. Their whole suit is in its nature an atatck upon the deed to Cox and upon the titles defendants hold under that deed. Citing and heavily relying on Humble Oil & Refining Co. v. Campbell, 5 Cir., 69 F.2d 667, 670, where the recovery was expressly put "on the ground that a plain, deliberate breach of trust has been shown" and Southern Pacific Co. v. Bogart, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099, where it was held that Southern Pacific was a trustee for the plaintiffs, appellants leave in no doubt that they predicate their recovery on the ground that the deed to, and the deeds out of, Cox were in fraud of their rights and the defendants should be constituted and held as trustees for them. Confronted by the judgment in the state court case and its pleading as res judicata, appellants find themselves in the exigencies of their situation in the impossible position of having to admit in one breath that the judgment in that case settled the validity of the deed to Cox, and of his conveyances under it, while claiming in another that in some way, though the defendants obtained their titles under those deeds and their titles were confirmed in them by the judgment, they obtained and are now holding these titles as trustees for appellants. Seen in its true light, therefore, this suit, in so far as it attempts to fix a charge or claim upon the leases transferred to Cox, free of the oil payment, and by him transferred to others, is merely an effort to relitigate what has once been fully determined, an effort which, upon settled principles of res judicata, must fail.[4] In so far as the suit is an effort to defeat Pace's claim reserved in the deed to Cox, while Pace was not a party to the state court suit, such claim as plaintiffs have is under the deed to Cox, and they are estopped by the judgment establishing that this is so from contesting the validity of the charge made in that deed in Pace's favor, and from complaining of payments made to Pace in satisfaction thereof.

In addition to complaining of the judgment against them as to defendants holding leases free of plaintiffs' claim, appellants complain that the effect of the judgment was to deprive them also of their right to receive from those obligated to pay it to them, amounts due them under the oil payment reserved in the deed to Cox. They insist that even if the judgment is affirmed as to all of the other defendants, it should be reversed as to the defendants, American Liberty Oil Co., Wofford Cain and Benson Drilling Company, so as to permit them to have an accounting.

We cannot agree that the effect of the affirmance would be, as appellant fears. The district judge, in his findings and orders in the case, made it clear that none of the defendants were contesting or disputing the right of plaintiffs to receive all moneys due them under the Cox deed, and that nothing in the judgment did affect that right. In deference, however, to appellants' expressed apprehensions, the affirmance of the judgment will be without prejudice to these rights. Without prejudice therefore to appellants' rights to demand and receive sums due them under the

4 Tait v. Western Maryland, 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Fagin v. Quinn, 5 Cir., 24 F.2d 42 (certiorari denied 277 U.S. 606, 48 S.Ct. 602, 72 L.Ed. 1012); Williams v. Tooke, 5 Cir., 108 F.2d 758; Southern Pac. R. Co. v. U. S., 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; Eastern States Pet. Co. v. Gilliland Refg. Co., Tex.Civ.App., 151 S.W.2d 933; Rio Bravo Oil Co. v. Hebert, 130 Tex. 1, 106 S.W.2d 242; Gann v. Putnam, Tex.Civ.App., 159 S.W.2d 931; Guettel v. United States, 8 Cir., 95 F.2d 229, 118 A.L.R. 1060.

oil payment reserved in the Cox deed after the Pace judgment has been fully satisfied, the judgment is affirmed.