**ENERGY FUND OF AMERICA, INC., et al., Appellants,**

v.

**G. E. T. SERVICE COMPANY et al., Appellees.**

No. 5539.

Court of Civil Appeals of Texas, Eastland.

Dec. 18, 1980.

Rehearing Denied Jan. 15, 1981.

Richard B. Tanner, W. Mike Baggett, Winstead, McGuire, Sechrest & Trimble, Dallas, for appellant.

Michael Simpson, Bridgeport, Molly Steele Bishop, Thompson & Knight, Dallas, Ben Douglas, Brooks, Tarlton, Gilbert, Douglas & Kressler, Fort Worth, for appellee.

RALEIGH BROWN, Justice.

G. E. T. Service Company, Republic Supply Company, Halliburton Well Service Corporation and Schlumberger Well Services Corporation sued Energy Fund of America, Inc., Ayco Texas Production Company, Ayco Development Corporation, James E. Conway and Christy W. Bell to recover for services performed and materials furnished in connection with the drilling of the Henry P. Maj # 1 oil and gas well in Hood County, Texas. The plaintiffs also sought foreclosure of their respective contractors' liens on the Maj lease owned by the defendants. At the conclusion of the testimony, the trial court granted plaintiffs' motions for instructed verdict and rendered judgment that all defendants were jointly and severally liable to all plaintiffs in the following amounts: to G. E. T. Service Company, $7,489.23 plus attorneys' fees of $4,750.00; to Schlumberger, $11,294.91 plus attorneys' fees of $9,151.49; to Halliburton, $46,100.61 plus attorneys' fees of $10,120.41; and to Republic Supply, $16,652.87 plus attorneys' fees of $7,816.48. The trial court also ordered foreclosure of plaintiffs' liens on the Maj lease. All defendants appeal. We affirm in part, and reverse and remand in part.

On July 21, 1977, Energy Fund of America and Ayco Texas Production Company, a limited partnership whose general partners were Ayco Development Corp., James E. Conway and Christy W. Bell, executed a written instrument whereby they agreed to drill three oil and gas test wells on leases held by Energy Fund. This instrument was entitled "Joint Venture Agreement" and created what the parties called the Energy Fund-Ayco Joint Venture. It provided that Ayco Texas Production would make capital contributions of $154,000.00 per well and that Energy Fund would contribute the lease and all other expenses incurred in drilling and completing the wells. It also made provision for the sharing of profits, joint decision making on the happening of certain contingencies, and it provided that Ayco Texas Production was to receive a copy of all drilling reports and test data and was allowed access to the rig floor when logs were run and core samples were taken.

Also on July 21, 1977, and pursuant to the "Joint Venture Agreement," the Energy Fund-Ayco Joint Venture and Energy Fund of America executed a "Drilling Contract" purporting to make Energy Fund an independent contractor for purposes of drilling and completing the three wells contemplated by the "Joint Venture Agreement."

This "Drilling Contract" required the joint venture to contribute $154,000.00 as the "turnkey price" for drilling each of the three wells. Energy Fund of America, as independent contractor, was to be responsible for all expenses incurred in drilling and completing the wells.

The Henry P. Maj # 1 was the third well drilled pursuant to this agreement. Throughout the spring of 1978, the plaintiffs, at the request of Energy Fund of America, performed services and supplied materials required to drill and complete the well. When plaintiffs were unable to collect for the services rendered and materials furnished they filed liens with the County Clerk of Hood County pursuant to Tex.Rev. Civ.Stat.Ann. art. 5473[1] and art. 5476b[2] (Vernon 1958). Thereafter, they sued Energy Fund of America to foreclose their liens. Ayco Texas Production Company and its general partners, Ayco Development Corporation, James Conway and Christy Bell, were joined later as joint venturers, the plaintiffs alleging that they were jointly and severally liable for the debts incurred by Energy Fund of America.

At the conclusion of the testimony, the trial court granted plaintiffs' motions for instructed verdict against all defendants, finding as a matter of law that a joint venture relationship existed between Energy Fund of America and Ayco Texas Production Company, and its general partners, Ayco Development, James Conway and Christy Bell.

Energy Fund of America complains that the trial court erred in granting the instructed verdict against it and contends that there were fact issues that should have been submitted to the jury. We disagree.

The rule to be applied in passing upon the propriety of granting an instructed verdict is stated in *Collora v. Navarro*, 574 S.W.2d 65 (Tex.1978):

> The rule as generally stated is that the plaintiff is entitled to a directed verdict when reasonable minds can draw only one conclusion from the evidence. The task of an appellate court in such a case is to determine whether there is any evidence of probative force to raise fact issues on

1. Any person, corporation, firm, association, partnership, artisan, materialman, laborer or mechanic who shall, under contract, expressed or implied, with the owner of any land, mine or quarry, or the owner of any gas, oil or mineral leasehold interest in land, or the owner of any gas pipeline or oil pipeline, the owner of any oil or gas pipeline right-of-way, or with the trustee, agent or receiver of any such owner, perform labor, furnish or haul materials, machinery or supplies used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well, water well, mine or quarry, or oil or gas pipeline, shall have a lien on the whole of such land or leasehold interest therein, or oil pipeline, or gas pipeline, including the right-of-way for same, or lease for oil and gas purposes, the buildings and appurtenances, and upon the materials, machinery and supplies so furnished or hauled, and upon all other materials, machinery and supplies owned by such owner and used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well, water well, mine or quarry or oil or gas pipeline, and upon said oil well, gas well, water well, oil or gas pipeline, mine or quarry for which the same are furnished or hauled, and upon all of the other oil wells, gas wells, buildings and appurtenances, including pipeline, leasehold interest, and land used in operat-

ing for oil, gas and other minerals, upon such leasehold or land or pipeline and right-of-way therefor, for which said materials, machinery or supplies were furnished or hauled or labor performed. Provided, that if labor, supplies, machinery or materials are furnished to or hauled for a leaseholder, the lien hereby created shall not attach to the underlying fee title to the land.

2. When labor is performed by the day or week, then the indebtedness shall be deemed to have accrued at the end of each week during which labor is performed. When material or services are furnished, the indebtedness shall be deemed to have accrued at the date of the last delivery of such material or services; and all materials or services furnished by any person upon the same land, mine or quarry, gas, oil or mineral leasehold interest, gas pipeline or oil pipeline, or oil and gas pipeline right-of-way, shall for the purposes of this Act be considered as having been furnished under a single contract regardless of whether or not the same was furnished at different times or on separate orders, provided that no more than six (6) months shall have elapsed between the date of furnishing of such material and services and the date on which materials or services are next furnished.

the material questions presented. The court must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, discarding all contrary evidence and inferences. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649 (Tex.1976); *Echols v. Wells*, 510 S.W.2d 916 (Tex.1974). When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (1948).

■ Robert E. Davis, president and sole owner of Energy Fund of America, testified that Energy Fund owned the lease upon which the Henry P. Maj # 1 well was drilled. He admitted that plaintiffs supplied services and materials for the drilling, completion and operation of that well, and that their charges for same were fair and reasonable in Hood County. Energy Fund neither pled nor proved any right to an offset against the charges made by the plaintiffs. We hold that as to Energy Fund's liability for the amounts owing to plaintiffs for services and materials supplied to the Henry P. Maj # 1, there was no material issue of fact.

■ Energy Fund of America argues that the trial court erred in foreclosing the liens claimed by G. E. T. Services Co., Schlumberger and Republic Supply. It argues that by virtue of the "Drilling Contract," it was an independent contractor, and the plaintiffs were subcontractors, and therefore, plaintiffs failed to perfect their liens by not complying with the notice provisions of Article 5474[3] and Article 5476a.[4] We disagree.

Plaintiffs filed their lien claims against Energy Fund of America as owner of the Maj lease upon which the services were performed and the materials furnished, pursuant to Article 5473. Regardless of the "Drilling Contract," it is undisputed that Energy Fund of America was the record owner of the Maj lease; therefore, the notice provisions of Articles 5474 and 5476a, for perfecting subcontractors' liens do not apply.

■ Energy Fund challenges the validity of the lien claimed by Schlumberger because it was filed and verified by Schlumberger's attorney, and therefore, the averments are hearsay. Energy Fund cites Article 5476a, *Landscape Design and Construction, Inc. v. Warren*, 566 S.W.2d 66 (Tex.Civ.App.—Dallas 1978, no writ), and *Decor Dimensionals, Inc. v. Smith*, 494 S.W.2d 266 (Tex.Civ.App.—Dallas 1973, no writ) as authority for the proposition that an affidavit filed to perfect a mechanic's and materialman's lien must be based on personal knowledge.

The cases cited by Energy Fund are distinguishable in that they deal with summary judgment proceedings under Tex.R.

**3.** Any person, corporation, firm, association, partnership or materialman who shall furnish or haul such machinery, material or supplies to a contractor or subcontractor, or any person who shall perform such labor under a subcontract with a contractor, or who as an artisan or day laborer in the employ of such contractor or subcontractor shall perform any such labor, shall have a lien upon all such property or interest described in the preceding article, including right-of-way, for which said material and supplies were furnished or hauled and labor performed, in the same manner and to the same extent as the original contractor, for the amount due him for material furnished or for such hauling or labor performed.

**4.** Every original contractor, journeyman, day laborer, or other person, within six (6) months after the indebtedness accrues, shall file in the office of the County Clerk of the county where the property is situated, to be recorded in a book kept by the County Clerk for that purpose, a statement verified by affidavit setting forth the amount claimed and the items thereof, the dates of performance or furnishing, the name of the owner of the land, mine or quarry, gas, oil or mineral leasehold interest, gas pipeline or oil pipeline, or oil or gas pipeline right-of-way, if known, the name of the claimant and his mailing address, a description of the land, mine or quarry, gas, oil or mineral leasehold interest, gas pipeline or oil pipeline, or oil or gas pipeline right-of-way, and if the claimant be a claimant under Article 5474, the name of the person for whom the labor was performed or materials or service furnished together with a statement that the claimant has given to the owner, his agent or representative or receiver, notice in writing as required by Article 5476a.

Civ.P. 166A. Rule 166A specifically provides that affidavits filed in support of a motion for summary judgment "shall be made on personal knowledge." Article 5476a has no such provision. It states in pertinent part:

Every original contractor, journeyman, day laborer, or other person, within six (6) months after the indebtedness accrues, shall file . . . a statement verified by affidavit setting forth the amount claimed and the items thereof, the dates of performance or furnishing, the name of the owner of the land . . . or mineral leaseholder interest . . . if known, the name of the claimant and his mailing address, a description of the land . . . or mineral leasehold interest. . . .

The court in *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405 (Tex.Civ.App.—Eastland 1975, no writ) states:

Texas is not a jurisdiction which applies a "strict compliance" rule before a lien exists, but rather follows a "substantial compliance" rule. As stated in *Whiteselle v. Texas Loan Agency*, 27 S.W. 309 (Tex.Civ.App.—1894, writ ref.):

"No material departure from the requirements of the statute can be indulged, without fatal results to the lien; but a substantial compliance with the terms of the statute is all that is necessary to put the lien in operation, and give it full force and validity. *Pool v. Wedemeyer*, 56 Tex. 287."

The lien claim filed by Schlumberger meets the requirements of the statute. Furthermore, Article 5455 (Supp.1980), which prescribes the form of the lien claim under Article 5453, requires that the affidavit "be signed by the claimant *or by some person on his behalf...*" (emphasis added). We think, therefore, an affidavit filed to perfect a lien under Article 5473 can be signed by someone on behalf of the claimant. The affidavit filed by Schlumberger states that the affiant is duly authorized and qualified to make same. We hold that the affidavit filed by Schlumberger is sufficient to perfect the lien against the interest of Energy Fund in the Maj lease.

■ The judgment against Ayco Texas Production Company and its general partners, Ayco Development Corp., James Conway and Christy Bell was predicated solely on the trial court's finding that as a matter of law, Ayco Texas Production and Energy Fund of America were involved in a joint venture. The "Ayco defendants" argue that this was error because the evidence raised a fact issue as to whether a joint venture existed. We agree.

In *Coastal Plains Development Corp. v. Micrea, Inc.*, 572 S.W.2d 285 (Tex.1978), the court said:

It is a general rule of construction that when parties have bound themselves to an unambiguous contract, the courts will give effect to the manifest intent expressed therein. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968). However, when the record demonstrates that the actual effect of the arrangement resulting from the agreement is to create a status different from that stated in the language of the contract, the parties' designation will not control. *Neece v. A. A. A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597 (1959).

The court also states:

A joint venture, being "ex contractu," must be based upon an agreement, either express or implied. *Donald v. Phillips*, 13 S.W.2d 74 (Tex.Com.App.1929, judgment adopted); *Fuller v. Flanagan*, 468 S.W.2d 171 (Tex.Civ.App.1971, writ ref'd n.r.e.); *Henning v. Cox*, 148 F.2d 586 (5th Cir. 1945); 2 S. Williston, Williston on Contracts § 318A (3d ed. 1959). Beyond this threshold requirement, several essential elements are generally recognized. These elements are (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956); *Luling Oil & Gas Co. v. Humble Oil and Refining Co.*, 144 Tex. 475, 191 S.W.2d 716 (1945); *Chandler v. Herndon*, 450 S.W.2d 703 (Tex.Civ.App.1970, writ ref'd n.r.e.). The intention of the

parties to a contract is a prime element in determining whether or not a partnership or joint venture exists. *Luling Oil & Gas Co. v. Humble Oil and Refining Co.,* supra; *Holman v. Dow,* 467 S.W.2d 547 (Tex.Civ.App.1971, writ ref'd n.r.e.).

Reviewing the evidence as required by *Collora v. Navarro,* supra, we find that the "Joint Venture Agreement" upon which plaintiffs rely contains the following provision:

> 5. Drilling Contract. The Corporation (Energy Fund of America) in its individual capacity and not as a participant in the Joint Venture will contract to drill the test well as described in the Drilling Contract attached as Exhibit C hereto.

The contemporaneous Drilling Contract executed pursuant to the alleged "Joint Venture Agreement" contained a provision making Energy Fund of America solely responsible for all costs and risks involved in drilling, completing and operating the well. Although the "Joint Venture Agreement" contained a provision for sharing losses in the proportion to capital contributions, both this agreement and the Drilling Contract indicates that the Ayco defendants were only obligated to Energy Fund for a capital contribution of $154,000.00 as a turnkey price and for their interest in the well.

Bell admitted visiting the well on two occasions. He denied, however, that he did anything but observe operations. He also admitted speaking with Gordon Taylor of G. E. T. about Energy Fund's failure to pay its bill, but Bell denied that he promised to make sure the bill was paid. There is no other evidence that the Ayco defendants actually exercised any control over the drilling, completion or operation of the Henry P. Maj # 1 well.

Under this state of the evidence we think reasonable minds could differ with respect to the required elements of sharing losses and joint operation, and therefore, the trial court erred in granting an instructed verdict against such defendants. *Collora v. Navarro,* supra.

All defendants argue that the trial court erred in instructing a verdict for attorney's fees. In oral argument, plaintiffs agreed that the issue of attorneys' fees is one of fact and should have been decided by the jury. *International Security Life Insurance Co. v. Spray,* 468 S.W.2d 347 (Tex.1971).

Our holdings herein make the other points of error presented immaterial.

Accordingly, the trial court's action in rendering judgment against Energy Fund of America, Inc. for the debts and foreclosing the liens against Energy Fund's interest in the Maj lease is affirmed. The judgment in awarding attorneys' fees and in all other respects is reversed and remanded.